NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0145n.06

No. 23-3653

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| JOSE ORLANDO YANEZ-OLIVO, | ) | **FILED** |
| Petitioner, | ) | Mar 26, 2024 |
|  | ) | KELLY L. STEPHENS, Clerk |
| v. | ) |  |
|  | ) | ON PETITION FOR REVIEW FROM |
| MERRICK B. GARLAND, Attorney General, | ) | THE UNITED STATES BOARD OF |
|  | ) | IMMIGRATION APPEALS |
| Respondent. | ) | OPINION |
|  | ) |  |

Before: STRANCH, LARSEN, and DAVIS, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Jose Orlando Yanez-Olivo petitions this court to review the decision of the Board of Immigration Appeals affirming the Immigration Law Judge's removal order. Both the IJ and the Board determined that Yanez-Olivo had failed to establish exceptional and extremely unusual hardship warranting a stay of removal. For the reasons stated below, we DENY Yanez-Olivo's petition.

## I. BACKGROUND

Yanez-Olivo was born in Mexico and, by his account, entered the United States in February 2003. While in the United States, Yanez-Olivo has made his living in the roofing industry. Although his parents are deceased, Yanez-Olivo testified that he has nine siblings residing in Mexico. He has sole custody of one child, a U.S. citizen daughter born in 2014.

On June 26, 2019, Yanez-Olivo applied for a stay of removal based on exceptional and extremely unusual hardship. After a hearing on the matter, the IJ found that Yanez-Olivo was healthy, had "transferrable employment skills," and had "family in Mexico . . . that could provide a support system for him and also his daughter." He likewise found that Yanez-Olivo's daughter was his only qualifying relative, had no current health issues, had healthcare coverage, would leave with Yanez-Olivo if he was deported, and knew "a bit" of Spanish. Based on those facts, the IJ concluded Yanez-Olivo failed to establish that his daughter "would suffer any hardship substantially beyond that ordinarily associated with a person's ordered removal from the United States."

The IJ denied Yanez-Olivo's application for cancellation of removal. The Board affirmed the IJ's decision and dismissed Yanez-Olivo's appeal, upholding the IJ's findings of fact and writing that "the record is insufficient to demonstrate that the respondent's removal would cause hardship to his daughter that is 'substantially different from, or beyond, that which would normally be expected from the deportation of an alien with close family members here.'" AR 3-4 (quoting *In re Monreal-Aguinaga*, 23 I.&N. Dec. 56, 65 (B.I.A. 2001)). Yanez-Olivo petitions this court to review the denial of his application, arguing first that we should adopt a de novo standard of review, and second that the IJ erred by finding that Yanez-Olivo did not establish unusual hardship. We address these arguments below.

## II.   ANALYSIS

### A.   Standard of Review

Under 8 U.S.C. §1252(a)(2)(B)(i), this court generally may not review a stay of removal proceedings. Subsection (D), however, states that nothing in section (B) "shall be construed as precluding review of constitutional claims or questions of law." *Id.* §1252(a)(2)(D). Because

exceptional and extremely unusual hardship determinations are mixed questions of fact and law, we may review them. *Wilkinson v. Garland*, No. 22-666, 2024 WL 1160995, at *9 (U.S. Mar. 19, 2024).

Yanez-Olivo requests the adoption of a "de novo standard of review with regards to the determination of eligibility for cancellation of removal," arguing that the issue is one of law, not fact. The Government contends that we "should review the hardship determination by applying the standard set forth in 8 U.S.C. § 1252(b)(4)(B): whether the established findings of fact compel the conclusion that the applicant has established the requisite hardship." While this appeal was pending, however, the Supreme Court issued its decision in *Wilkinson v. Garland*. There, the Court held that "[b]ecause this mixed question is primarily factual, [its] review is deferential." *Id.* at *9. Accordingly, we apply a deferential standard of review when considering the IJ's determination of eligibility for cancellation of removal.

## B.      Exceptional and Extremely Unusual Hardship

To be eligible for cancellation of removal, relevant to this petition, a petitioner must show that his or her removal will result in "exceptional and extremely unusual hardship" to a qualifying relative. *In re Gonzalez Recinas*, 23 I.&N. Dec. 467, 468 (B.I.A. 2002). To prove this, a petitioner "must demonstrate that his or her spouse, parent, or child would suffer hardship that is substantially beyond that which would ordinarily be expected to result from the person's departure." *Id.* To determine such hardship, the Board must cumulatively consider factors such as "the age, health, and circumstances of the qualifying family members, including how a lower standard of living or adverse country conditions in the country of return might affect those relatives." *Id.* (citing *Monreal*, 23 I.&N. Dec. at 63).

*Monreal* and *In re Andazola*, 23 I.&N. Dec. 319 (B.I.A. 2002), are the "seminal interpretations of the meaning of 'exceptional and extremely unusual hardship[.]'" *Gonzalez Recinas*, 23 I.&N. Dec. at 472. In *Monreal*, although Monreal's children would be temporarily separated from each other if he were deported, the IJ found that Monreal had family in Mexico; his children were in good health; and one of his children knew Spanish. 23 I.&N. Dec. at 64. So, he failed to show exceptional and extremely unusual hardship, and the Board dismissed Monreal's appeal of the IJ's denial of a stay of removal. *Id.* at 65. Likewise, in *Andazola*, a single mother of two American-born children did not satisfy the hardship requirement because she had sufficient assets and failed to show that her children would be deprived of an opportunity to attend school if they lived in Mexico. *Andazola*, 23 I.&N. Dec. at 324.

By contrast, in *Gonzalez Recinas*, the Board held that a single mother showed that her six U.S.-born "children [would] suffer exceptional and extremely unusual hardship if she is removed." 23 I.&N. at 473. There, the entirety of Gonzalez Recinas's family, apart from Gonzalez Recinas herself, lawfully resided in the United States. *Id.* at 472. The Board reasoned that as a single mother of six with "no family to return to in Mexico," Gonzalez Recinas would "no doubt experience difficulties in finding work"; that removal would completely strip her and her six children of their support system; and that, cumulatively, the burden on a family of that size would be great. *Id.* at 471-72. The Board nevertheless declared that *Gonzalez Recinas* was "on the outer limit of the narrow spectrum of cases in which the exceptional and extremely unusual hardship standard will be met." *Id.* at 470.

Yanez-Olivo attempts to distinguish his situation from the facts in *Monreal* and *Andazola* and argues that his case is similar to *Gonzalez Recinas*. But in *Gonzalez Recinas*, the single mother's entire support system resided lawfully in the United States, and here, Yanez-Olivo has a

large immediate family in Mexico that the IJ found could provide a support system there. Additionally, the mother in *Gonzalez Recinas* had six children—here, by contrast, Yanez-Olivo has only one young daughter, and therefore the Board's reasoning regarding Gonzalez Recinas's potential economic difficulties due to her number of dependents is inapplicable. Like the children in *Monreal* and *Andazola*, here, Yanez-Olivo's daughter stands to suffer ordinary hardship related to his deportation (even accounting for Yanez-Olivo's comparative financial difficulties), especially given that she is in good health and knows some Spanish. Thus, like the parents in *Monreal* and *Andazola*, Yanez-Olivo has not established that his daughter's hardships would rise to a level requiring a stay of removal.

This is not to say that his daughter will not experience hardship in her move. But under the IJ's findings, we cannot hold that her difficulties will be "substantially beyond" that of others. *Id.* at 172. Accordingly, under a deferential standard of review, we must deny his petition.

## III.   CONCLUSION

For the foregoing reasons, we DENY the petition.